Susan H. Gahres, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 4, 1981, before Judges MENCER, CRAIG and MACPHAIL, sitting as a panel of three.

*Marian E. Frankston,* for petitioner.

*John T. Kupchinsky,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, August 6, 1981:

The claimant[1] has appealed from a decision of the Unemployment Compensation Board of Review (board) which denied compensation on the ground that the claimant, who had been terminated as Director of the Bureau of Appalachian Development of the Pennsylvania Department of Commerce, was ineligible under Section 1002(11) of the Unemployment Compensation Law,[2] 43 P.S. §892(11), which excludes from compensable employment the jobs of:

> (11) Individuals serving in positions which, under or pursuant to the laws of this Commonwealth, are designated as . . . a major nontenured policymaking or advisory position. . . .

Without dispute, the claimant's position as a bureau head was a nontenured one. The record also is clear that an incoming Secretary of the Department of Commerce dismissed the claimant, with no fault on her part being alleged. Moreover, the board, as respondent here, makes no claim that the position was a policymaking one, expressly acknowledging that the board's decision is based upon a holding that claimant's role was advisory. Therefore, the full question presented is:

> Was claimant's position designated under or pursuant to the laws of the Commonwealth as a major advisory position?

---

[1] Susan H. Gahres.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended.*

We note particularly that the terms of Section 1002(11) do not apply the exclusion to positions which are policymaking or advisory positions merely as a matter of fact. The law applies the exclusion to those which are so "designated" and describes the designation as being "under or pursuant to the laws of this Commonwealth." We must construe the statute to give effect to all of its wording, and, when the words are clear, we cannot disregard the literal language. 1 Pa. C. S. §1921(a), (b). Of course, not even the claimant argues that the exclusion requires the existence of a provision of law which uses the precise words, "major" or "policymaking" or "advisory." However, there must be some official designation of the position as advisory (if not policymaking) under or pursuant to law—that is, by the words of a statute, regulation, executive order or the like.

The logic of such a requirement is plain. The exclusion imposes ineligibility on the basis that any occupant of such a position can anticipate the possibility of job termination upon a change of administration, so that unemployment in such circumstances cannot be regarded as sudden and unexpected. The required official designation hence provides a basis for that expectation; when the nature of the position is designated by law, there is thus an official signpost which informs the jobholder, upon assuming the position, of what can be expected. Moreover, discrimination against the individual is avoided if ineligibility rests upon the official designation of the position, rather than upon the specific activities or personal performance of a particular incumbent.

We therefore turn to the legal provisions which should be examined with respect to the existence of an official designation. In the background is the federal Appalachian Regional Development Act of 1965, 40

U.S.C. Appx. §§1 *et seq.* (ARDA). The ARDA's purpose is to deal with the special problems of the Appalachian region by promoting its economic development and, with joint federal and state efforts, by providing facilities for growth and meeting common needs on a coordinated and concerted regional basis. 40 U.S.C. Appx. §2. The policymaking body is the Appalachian Regional Commission, composed of a presidential appointee and of the governors of each of the thirteen member states, 40 U.S.C. Appx. §101(a). The Commission makes policy decisions as a body, 40 U.S.C. Appx. §101(b), and its policy powers may not be delegated to any person not a Commission member. 40 U.S.C. Appx. §101(c). These provisions make clear why the parties agree that the claimant's position involved no policymaking. The federal law did not mention the claimant's state position.

From the Pennsylvania statutes, the board cites only Section 701(m) of the Administrative Code of 1929,[3] 71 P.S. §241(m), which provides for Pennsylvania's ARDA participation as follows:

> The Governor shall . . . provide for the participation of the Commonwealth of Pennsylvania in the programs of the . . . Appalachian Regional Development Act of 1965 . . . and in furtherance thereof . . . direct any department, board or commission under his jurisdiction to make arrangements, enter into agreements, appoint and assign personnel and to take any other measures for such purposes and in such manner as he deems necessary to insure efficient Commonwealth participation. . . .

This provision provides enabling authority to the Governor and the Department of Commerce to establish

---

[3] Act of June 8, 1965, **P.L.** 107, *as amended.*

the position in question, but does not deal with it as such.

The pertinent Pennsylvania regulations are found at 4 Pa. Code §§7.21-7.31. These provisions name the Secretary of Commerce as the ARDA state member, and, as his alternate, designate a bureau director other than the one in question; those officials, respectively, are given the policymaking and administrative responsibilities. 4 Pa. Code §§7.22-7.24. Other sections in the regulations provide for advisory functions by the State Planning Board and the Department of Community Affairs, 4 Pa. Code §§7.27, 7.28, but there is no mention of the claimant's former position.

Finally, the record discloses no executive order or other executive branch action which is germane. Job descriptions for an "Appalachian Development Director" and also for an "Administrative Officer V" were offered, but nothing in the record ties them to the claimant's position, their content is inconclusive, and the board's decision and brief place no reliance on them.

The board's findings and decision point to no designation, by or under law, of claimant's job as advisory; the board only concludes that "the claimant's job must be *deemed* to have been designated pursuant to the law of the Commonwealth." (Emphasis supplied.) In relation to that conclusion, the board found:

In her capacity as Bureau Director, the claimant reviewed local proposals and recommended the projects she deemed worthwhile to the Secretary of Commerce, who made the final decision.

. . .

The claimant advised the Secretary of Commerce on which projects should be forwarded by him to the Regional Commission and made policy recommendations in the same capacity.

Once policy was determined by the Governors for Pennsylvania, the claimant implemented policy in the Commonwealth.

The board decided that "claimant occupied a major advisory position" because "the claimant admitted that she acted in an advisory capacity to the Secretary of Commerce as head of a Bureau administering a program with statewide impact." The board was impressed by the fact that "the claimant reviewed development proposals" and "recommended worthwhile proposals to the Secretary." Thus, from the claimant's performance, the board *deemed* a designation to exist, even though the board could find no actual designation.

It is true that the Secretary testified that the claimant, as well as others, gave advice. But virtually all supervisory and technical staff employees give advice to their superiors from time to time. Indeed, the extent to which the advice of an administrator or supervisor is sought will depend a great deal on the competency of the individual. However, as noted above, the governing criterion here is and should be an impersonal one, derived from the law and not from how effectively the particular individual evolves in the job, which would penalize persons whose greater competency has caused their advice to be valued.

The board, in viewing the actual performance of this specific claimant, lacking any official designation, placed reliance upon a U.S. Department of Labor publication entitled "Draft Language and Commentary to Implement the Unemployment Compensation Amendments of 1976—P.L. 94-566" which stated:

If the State law or local ordinance designates the position as policymaking or advisory the exclusion is applicable. In instances in which the law or ordinance does not clearly and specifically so categorize or label the position, other

pertinent factors such as job descriptions, the qualifications of individuals considered for and appointed to the position and the responsibilities involved, should be taken into account in determining the character of the position for purposes of applying the exclusion.

Of course, such background commentary is not admissible or needed as legislative history where the provisions of law, as here, are clear and not ambiguous, *Jopek v. New York Central Railroad Co.*, 353 F.2d 778 (3rd Cir., 1965); *Glencrest Realty Co. v. Zoning Hearing Board of Washington Township*, 46 Pa. Commonwealth Ct. 177, 179, 406 A.2d 836, 838 (1979); nor can such commentary be read in conflict with words which the law itself contains, 1 Pa. C. S. §1939. The board misinterprets the commentary by viewing it as an authorization to embark upon an individualized examination of the history of the particular incumbent after-the-fact. At most, that commentary can be read to indicate that, if no designation is found in statute or ordinance, reference may be made to other official documentation such as job descriptions and job qualifications, not to post mortems as to how a particular jobholder worked out.

We therefore conclude that the board erred as a matter of law in its interpretation of Section 1002(11) and, there being no official designation that the position was a major advisory one, benefits should be granted.

In view of our conclusion, we do not reach the constitutional questions raised on behalf of claimant.

### ORDER

Now, August 6, 1981, the decision of the Unemployment Compensation Board of Review, No. B-178035, is reversed, and this case is remanded for computation of benefits.