City of Philadelphia, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 11, 1982, before Judges BLATT, WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Rosalie M. Leonard*, with her *Alan J. Davis*, City Solicitor, *Judith N. Dean*, Deputy City Solicitor, *Kenneth M. Jarin*, Deputy City Solicitor, *Ellis Saull*, Assistant City Solicitor and *Kevin Gallagher*, Paralegal Assistant, for petitioner.

*Charles G. Hasson*, Associate Counsel, with him *Richard L. Cole, Jr.*, Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, August 5, 1982:

The City of Philadelphia (petitioner) challenges a decision of the Unemployment Compensation Board of Review (Board) granting benefits to John Pierron. The Board found that Mr. Pierron, who was the appointed Executive Director of the Philadelphia Civic Center,

3. ... directed the overall activities of the Civic Center, but he in turn was subject to the direction and control of his immediate superior officer, City Representative and Director of Commerce and of the Board of Trade and Commerce.

4. The claimant attended Board meetings but was not a member; he made recommendations to the Board but any decision he made was subject to their review.

The Board concluded that Mr. Pierron was not employed in "a major nontenured policymaking" position under Section 1201(b)(9) of the Unemployment Compensation Law (Law),[1] and that he was therefore eligible for benefits. This petition for review followed.

This Court has interpreted language similar to that in Section 1201(b)(9) when it examined Section 1002(11) of the Law which applies to Commonwealth employees in *Gahres v. Unemployment Compensation Board of Review*, 61 Pa. Commonwealth Ct. 114, 433 A.2d 152 (1981), and we noted there that:

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by the Act of September 27, 1971, P.L. 486, *as amended*, 43 P.S. §911(b)(9). Section 1201 reads in pertinent part as follows:

(a) Service performed after December 31, 1977, in the employ of any of the instrumentalities or any political subdivision of this Commonwealth or any of its instrumentalities or any instrumentality of more than one of the foregoing or any instrumentality which is jointly owned by this Commonwealth or a political subdivision thereof and one or more other states or political subdivisions of this or other states provided that such service is excluded from "employment" as defined in the Federal Unemployment Tax Act by section 3306(c)(7) of that act and is not excluded from "employment" under section 4(1)(4) of this act, shall be deemed to constitute employment subject to this act with the exceptions hereinafter set forth in section 1201(b).

....

(9) Individuals serving in positions which, under or pursuant to the laws of this Commonwealth, are designated as (i) *a major nontenured policymaking or advisory position*, or (ii) a policymaking position the performance of the duties of which ordinarily does not require more than eight hours per week. (Emphasis added.)

Our reading of this section persuades us that the word "major" applies to both a policymaking role and to an advisory one. In order to come within the section, therefore, an individual must occupy *either* a major policymaking *or* a major advisory position.

the terms of Section 1002(11) do not apply the exclusion to positions which are policymaking or advisory positions merely as a matter of fact. The law applies the exclusion to those which are so "designated" and describes the designation as being "under or pursuant to the laws of this Commonwealth." We must construe the statute to give effect to all of its wording, and, when the words are clear, we cannot disregard the literal language. 1 Pa. C. S. §1921(a), (b). Of course, not even the claimant argues that the exclusion requires the existence of a provision of law which uses the precise words, "major" or "policymaking" or "advisory." However, there must be some official designation of the position as advisory (if not policymaking) under or pursuant to law — that is, by the words of a statute, regulation, executive order or the like.

The logic of such a requirement is plain. The exclusion imposes ineligibility on the basis that any occupant of such a position can anticipate the possibility of job termination upon a change of administration, so that unemployment in such circumstances cannot be regarded as sudden and unexpected. The required official designation hence provides a basis for that expectation; when the nature of the position is designated by law, there is thus an official signpost which informs the jobholder, upon assuming the position, of what can be expected. Moreover, discrimination against the individual is avoided if ineligibility rests upon the official designation of the position, rather than upon the specific activities or personal performance of a particular incumbent.

*Id.* at 116, 433 A.2d at 153-54. Such an analysis is equally applicable here, and we must determine,

therefore, whether or not any statute, regulation or other official designation exists describing the Executive Director of the Civic Center as holding a *major nontenured policymaking or advisory* position."

Neither party has directed us to a specific description of the duties and functions of this position in the Philadelphia Home Rule Charter (Charter) or elsewhere. The Charter does provide that the office is exempt from civil service, Section 7.7-301(c) of the Charter, 351 Pa. Code §7.7-301(c), and the note following that section states that such an exemption is aimed at "the fostering and protecting of necessary personal and confidential relationhips...." While this language may suggest that the position was a sensitive one, we cannot say that it reaches the level of an official designation of the position as a major policymaking or advisory one.

Section 3.3-100(f) of the Charter, 351 Pa. Code §3.3-100(f), creates the Board of Trade and Conventions within the Philadelphia Department of Commerce, and Section 4.4-502, 351 Pa. Code §4.4-502, sets forth the powers and duties of the said Board. No mention is made, however, of the role of the Executive Director. It was found by the Board of Review that Mr. Pierron was not a member of the Board of Trade and Conventions and the record reveals that the Board, not he, was responsible for setting any policy that was made during the term of his employment. In view of the absence of any official reference to the duties of the Executive Director of the Civic Center, therefore, we cannot say that Mr. Pierron held "a major *policymaking* position." *Gahres.*

As to whether or not he held "a major advisory position," the Charter makes no reference to any advisory role for the Executive Director. Moreover, the Charter does grant authority to the mayor to appoint such advisory boards as deemed necessary, 351 Pa.

Code §3.3-100(h), and, in the absence of any showing that Mr. Pierron was officially so appointed to such a board or otherwise as an advisor, we find nothing in the Charter which would permit us to hold that he was in a major advisory position while he served as the Executive Director of the Civic Center.

We will therefore affirm the order of the Board.

### ORDER

AND Now, this 5th day of August, 1982, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.