Robert P. Ging, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 12, 1984, before Judges WILLIAMS, JR., CRAIG and COLINS, sitting as a panel of three.

*Michael F. Fives,* for petitioner.

*Charles G. Hasson,* Acting Deputy Chief Counsel, with him, *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

*Francine Ostrovsky,* Assistant Chief Counsel, with her, *Herbert W. Hoffman,* Deputy Chief Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for Amicus Curiae, Department of Labor and Industry.

OPINION BY JUDGE CRAIG, July 31, 1984:

Claimant Robert P. Ging, Jr. appeals from a decision and order of the Unemployment Compensation Board of Review, which based its denial of his compensation claim upon section 1002(11) of the Unemployment Compensation Law,[1] excluding from compensable employment the jobs of "[i]ndividuals serving in positions which, under or pursuant to the laws of this Commonwealth, are designated as . . . a major nontenured policymaking or advisory position. . . ."

The claimant had been employed with the Commonwealth of Pennsylvania, Department of Environmental Resources, as an Assistant Attorney General, assigned to the Litigation Department in the Western Region of Pennsylvania. His primary responsibility with the Bureau of Litigation was to insure compliance with the laws of the Commonwealth, specifically to enforce environmental laws in the field of surface mining, coordinate litigation and actually litigate claims of the bureau.

This court has previously considered section 1002(11) and stated that:

We note particularly that the terms of Section 1002(11) do not apply the exclusion to positions which are policymaking or advisory positions merely as a matter of fact. *The law applies the exclusion to those which are so "designated" and describes the designation as being "under or pursuant to the laws of this Com-*

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §892(11).

*monwealth''* . . . *that is, by the words of a statute, regulation, executive order or the like.* (Emphasis added.)

*Gahres v. Unemployment Compensation Board of Review*, 61 Pa. Commonwealth Ct. 114, 116, 433 A.2d 152, 153 (1981).

The board and the Department of Labor and Industry, in its brief amicus curiae, argue that a Management Directive, No. 530.22, issued by Robert C. Wilburn, Secretary of Budget and Administration, at the direction of Governor Dick Thornburgh, providing that major nontenured policymaking or advisory positions (as set forth in section 1002(11)) include[s] ''Chief Counsels and All Attorneys,'' is a designation which satisfies the official designation requirement of section 1002(11) because it was issued pursuant to 4 Pa. Code §1.1 *et seq.,* entitled ''Directives Management System.'' Recently, in *Bowe v. Unemployment Compensation Board of Review*, 83 Pa. Commonwealth Ct. 221, A.2d (1984), we agreed with the board because that Directive, supported by the authorization in 4 Pa. Code §1.2, was therefore issued under or pursuant to law and hence is a ''statute, regulation, executive order or the like,'' citing *Pennsylvania Department of Labor and Industry v. Unemployment Compensation Board of Review*, 61 Pa. Commonwealth Ct. 107, 108, 433 A.2d 156, 157 (1981), as well as *Gahres.*

However, unlike the situation of the bureau director in *Bowe*—whose initial appointment, on August 18, 1980, followed several months after the May 14, 1980 issuance of Management Directive No. 530.22—this case presents the further question of whether that Management Directive should be given effect with respect to this claimant, whose assumption of his final attorney position (as well as his original hir-

ing date as an attorney) antedated the directive's issuance date, according to the board's findings, which here established the following chronology:

September, 1978—initial employment by DER as an assistant attorney general (Attorney II);

December 17, 1979—job description executed, describing the position as front-line litigation work;

April 17, 1980—promotional appointment to position as Attorney II, with claimant being advised that such position was designated as "management";

May 14, 1980—Management Directive No. 530.22 issued designating all attorney positions as "major nontenured policymaking or advisory positions";

January, 1982—after termination from Commonwealth employment as Attorney II, unemployment compensation application filed, with base year of October 1, 1980 through September 30, 1981.

There is no significance in the fact that the claimant's base year, as noted in the above chronology, commenced before the issuance of the directive; the statutory wording gives significance to the official designation of positions in which individuals are serving, without any express or implicit reference to the base year of employment upon which compensation is determined.

Therefore, the pivotal issue newly presented by the history of this case is: Under statutory terms providing that covered employment, for unemployment compensation purposes, shall not include services performed by individuals serving in positions designated by law as major nontenured policymaking or advisory ones, is the claimant disqualified where such a designation was issued after he entered upon

the position in question, which was nontenured in that he had no contract or agreement of hire and understood that he served at the will of the Governor?

This problem of alleged retroactivity is a difficult one. In *Gahres*, in striving to understand the significance of the wording of section 1001(11) of the Unemployment Compensation Law which negates compensation for state jobs "designated" as major nontenured policymaking or advisory ones, this court stated:

> The logic of such a requirement is plain. The exclusion imposes ineligibility *on the basis that any occupant of such a position can anticipate the possibility of job termination* upon a change of administration, so that unemployment in such circumstances cannot be regarded as sudden and unexpected. *The required official designation hence provides a basis for that expectation;* when the nature of the position is designated by law, *there is thus an official signpost which informs the jobholder, upon assuming the position, of what can be expected.* Moreover, discrimination against the individual is avoided if ineligibility rests upon the official designation of the position, rather than upon the specific activities or personal performance of a particular incumbent. (Emphasis added.)

*Gahres*, 61 Pa. Commonwealth Ct. at 116, 433 A.2d at 154.

From the standpoint thus voiced in *Gahres*, the explicit designation of the position's nature by official action is all-important, in that it provides for a definitive "signpost," as distinguished from the uncertainty and variability which may ensue when administrative agencies and the courts are content merely to "balance" the myriad qualities which can

be involved in a public position, usually by hindsight. Thus, as we perceived in *Gahres,* the legislature sought to provide uniformity and certainty.

Here, given that the management directive signpost was erected, should we regard it as ineffective, with respect to an employment at will, if it was not standing when the job was undertaken?

Despite our dictum in *Gahres,* suggesting that jobholders should be able to see the signpost ''upon assuming the position,'' there is no legal reason why the designation cannot be regarded as effective as to all described positions from the time of its issuance. An employment at will, lacking contractual property right status, is subject to unilateral modification. *Trainer v. Laird,* 320 Pa. 414, 183 A. 40 (1936).

To hold that the effectiveness of the management directive designation as to some individuals ''serving in positions'' so designated is negated because of the earlier start of their tenure, but remains effective as to persons occupying identical nontenured positions because their entry date followed the directive, would result in a new discriminatory classification, different from, but no less invidious than the discrimination which would ensue if the certainty of an explicit designation were not made the key.

Moreover, the claimant's contention, that the designation is being applied retroactively, is not literally correct. The designation—specifically its effect with respect to unemployment compensation eligibility—is being applied currently, at the point of his application for such compensation.

The claimant's further contentions, with respect to the admission of certain evidence, are also unsupportable. Neither the board nor we can reject either the existence of the Management Directive, or its date of issuance, on the basis of a hearsay attack; it is

obviously a provision of law susceptible of administrative and judicial notice when presented upon the record, as it was here. The hearsay nature of other testimony of a Commonwealth witness, if it were such, and the presentation of some testimony not under oath, is also harmless error at most; as noted above, the existence of the designation, not testimonial debate as to the varied duties of the position, is the determinative factor, as we have stressed in *Gahres* and *Bowe*.

Finally, there was no impropriety in the action of the first referee, who ruled the claimant to be eligible, in vacating his decision upon discovering that there was a lack of notice to the employer. The claimant does not dispute that absence of notice, and the record shows that the referee vacated his decision of March 26, 1982 by order dated April 6, 1982, eleven days later. The decision was subject to vacation for cause because it had not yet become final, the fifteen-day appeal period allowable under section 502 of the Unemployment Compensation Law, 43 P.S. §822, not having expired. Although we have held that the unemployment compensation authorities cannot sua sponte vacate an order without giving the parties an opportunity to be heard on the point prompting such vacation, *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973), the authorities here did afford further hearings at which the claimant had opportunity to show that the order of vacation, made upon the basis of the docket record, was unjustified, but did not do so.

Accordingly, the decision is affirmed.

### ORDER

Now, July 31, 1984, the decision of the board at No. B-213875, dated January 20, 1983, is affirmed.

DISSENTING OPINION BY JUDGE COLINS:

I must respectfully dissent.

Section 1002(11) excludes from compensable employment the jobs of individuals serving in positions which, under or pursuant to the laws of this Commonwealth are designated pursuant to a statute, regulation, executive order, or the like as a major nontenured policymaking or advisory position. *Gahres v. Unemployment Compensation Board of Review*, 61 Pa. Commonwealth Ct. 114, 433 A.2d 152 (1981).

Although I agree that Management Directive 530.22 was issued pursuant to the "Directives Management System", 4 Pa. Code §1.1, *et seq.*, I do not agree that, as such, it falls within the above definition which we have previously adopted.

The Directive in question does not qualify as a regulation, since it has not been properly published in the Pennsylvania Code. Section 702(3) of the Commonwealth Documents Law, 45 Pa. C. S. §702(3), provides that "[a]ll statements of policy which are general and permanent in nature" shall be codified in the Pennsylvania Code. Management Directive 530.22 is "general and permanent in nature", as it applies to all employees of the Commonwealth, both present and future.[1]

The Directive in question is also not a designation pursuant to a statute, executive order, or the like.

In addition, the claimant did not occupy a major advisory position. Although the claimant was sole counsel in some litigation cases, he received his assignments from a Litigation Chief and his work was

---

[1] Section 1204 of the Commonwealth Documents Act, 45 Pa. C. S. §1204, which states that "except as otherwise provided by regulations promulgated by the joint committee, an agency may omit and modify the procedures specified . . .", is also inapplicable. Section 1204 relates to regulations, like Management Directive 530.22, which affect all Commonwealth employees.

reviewed by a Litigations Coordinator, a Chief Counsel, a Secretary, and the Justice Department. The claimant could not initiate litigation on his own volition, nor could he terminate any litigation without the approval of his supervisors.

Accordingly, for the aforementioned reasons, I must dissent.