Certiorari Granted, No. 34,499, February 7, 2014

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-035

Filing Date: December 12, 2013

Docket Nos. 32,330 and 32,321 (consolidated)

NEW MEXICO DEPARTMENT OF
WORKFORCE SOLUTIONS and
NEW MEXICO STATE PERSONNEL
OFFICE,

Respondents-Appellants,

v.

SANDRA PEREZ,

Petitioner-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Valerie A. Huling, District Judge

N.M. Department of Workforce Solutions
Office of General Counsel
Marshall J. Ray
Rudolph P. Arnold
Albuquerque, NM

for N.M. Department of Workforce Solutions

Morrissey │ Lewis, LLC
Jason J. Lewis
Albuquerque, NM

for N.M. State Personnel Office

Youtz & Valdez, P.C.
Stephen Curtice
Shane Youtz
Albuquerque, NM

for Appellee

**OPINION**

**SUTIN, Judge.**

**{1}** Terminated from her position as personnel director under New Mexico's Personnel Act, Sandra Perez sought unemployment compensation. The district court determined that Ms. Perez was entitled to compensation, reversing administrative decisions to the contrary. The crux of the issue in the proceedings and on appeal is whether the personnel director position was designated pursuant to state law as a major nontenured advisory position. If so, compensation was properly denied. We hold that compensation was properly denied and reverse the district court.

**BACKGROUND**

**{2}** Whether Ms. Perez as personnel director has a right to unemployment compensation is governed by the definition of "employment" under NMSA 1978, Section 51-1-44(A) (1978) of New Mexico's Unemployment Compensation Law. In relevant part, Section 51-1-44(A)(5)(a) reads as follows:

> For purposes of the Unemployment Compensation Law:
>
> > A. "employment" means service performed by an individual in the employ of a governmental entity unless such service is performed by an individual in the exercise of his duties:
> >
> > . . .
> >
> > (5) in a position which, under or pursuant to state law, is designated as:
> >
> > > (a) a major nontenured [policymaking] or advisory position[.]

**{3}** In analyzing whether Section 51-1-44(A)(5)(a) applies to a state personnel director, the determinative factor is the state law that establishes the position of state personnel director. The Personnel Act, NMSA 1978, §§ 10-9-1 to -25 (1961, as amended through 2009), establishes a "personnel board" and a "personnel director." Section 10-9-3(A), (B); *see* §§ 10-9-8 to -12. The personnel board is appointed by the governor. Section 10-9-8. One of the duties of the personnel board is to hire, with the approval of the governor, a personnel director. Section 10-9-10(C). The designated statutory duties of the personnel director position are the following:

2

The director shall:

A. supervise all administrative and technical personnel activities of the state;

B. act as secretary to the board;

C. establish, maintain[,] and publish annually a roster of all employees of the state, showing for each employee his division, title, pay rate[,] and other pertinent data;

D. make annual reports to the board;

E. recommend to the board rules he considers necessary or desirable to effectuate the Personnel Act; and

F. supervise all tests and prepare lists of persons passing them to submit to prospective employers.

Section 10-9-12; *see* 1.7.1.8(A) NMAC (6/15/2010) ("Pursuant to the provision of . . . Section 10-9-12(A)[,] the director shall supervise all administrative and technical personnel activities of the state."). The personnel director's service is covered by the Personnel Act unless the personnel board determines that the position of director is one of policymaking. Sections 10-9-3(C), -4(N). Nothing in the record indicates that the personnel board has determined that the position of director is one of policymaking, and the parties do not argue one way or the other in that regard.

**{4}** The New Mexico Department of Workforce Solutions (the Department) initially denied Ms. Perez's unemployment benefits through the administrative process. After appealing the decisions of the Department, the Appeals Tribunal and the Board of Review (the Board) also held against Ms. Perez. The Board adopted the Appeals Tribunal's findings and conclusions in reaching its decision. The pertinent findings and conclusions were as follows.

FINDINGS OF FACT

4. [Ms. Perez] was nominated to the position of director by the (then) governor along with two other candidates also nominated by the governor. The State Personnel Board . . . appointed [Ms. Perez] as director in July 2004 and her appointment was approved by the governor.

5. [Ms. Perez's] duties as State Personnel Director include "recommend to the board rules [she] considers necessary or desirable to effectuate

3

the Personnel Act." (Section 10-9-12(E) NMSA 1978).

6. Per Section 1.7.1.8(A) NMAC ("Approval Authority"), [Ms. Perez] as director "shall supervise all administrative and technical personnel activities of the state."

7. [Ms. Perez] initiated, recommended[,] and drafted proposed regulations to the New Mexico Administrative Code for adoption by the Board and for subsequent public comment. She also provided advice, guidance[,] and direction to the Secretaries of various state government agencies and the governor regarding the administration of the State Personnel Act.

CONCLUSION

Here, the evidence establishes that [Ms. Perez] regularly acted in an advisory capacity to the State Personnel Board and to other state agencies in her position as State Personnel Director. While [Ms. Perez] correctly notes that final rules and regulations affecting the State Personnel Act were promulgated by the Board and not by the Director, [Ms. Perez's] function in initiating, drafting[,] and recommending such regulations that "[she] consider[ed] necessary or desirable to effectuate the Personnel Act" clearly indicate she acted in an advisory position as contemplated by [Section] 51-1-44(A)(5)(a). Therefore, as [Ms. Perez] acted in an advisory position in the exercise of her duties, her wages do not constitute wages in covered employment.

**{5}** The foregoing conclusional paragraph is instructive of how the administrative decision-makers viewed the evidence upon which they relied for their determinations. Their denial of Ms. Perez's "employment" coverage under Section 51-1-44(A)(5)(a) was based both on Ms. Perez's actual activity, that is, having "regularly acted in an advisory capacity[,]" and on the statutorily designated duties of the state personnel director, for example, the duty to "recommend to the board rules . . . necessary or desirable to effectuate the Personnel Act." Section 10-9-12(E). As we discuss later in this Opinion, however, a position-holder's actual activities are irrelevant and should be considered a non-factor by future administrative decision-makers faced with the question whether to apply Section 51-1-44(A)(5)(a). Nevertheless, the administrative decision-makers were correct in considering the statutorily designated duties of a personnel director, and their decision to deny Ms. Perez's employment benefits claim was proper.

**{6}** In this case, the administrative decision-makers focused on whether Ms. Perez's position as personnel director was advisory and did not consider whether it was policymaking. *See* § 10-9-12(A), (E); § 51-1-44(A)(5)(a). There was no issue concerning whether Ms. Perez was a nontenured employee. The district court, therefore, based its

4

decision on whether the position was a major advisory one. Accordingly, in this Opinion, we limit our review to the question whether the position of personnel director is "major" and "advisory" as those terms are used in Section 51-1-44(A)(5)(a).

**{7}** The primary rationale for the district court's rejection of an advisory designation followed from the court's comparison of the position of personnel director with the positions of department secretaries under NMSA 1978, Section 9-1-3(B)(1) (1977), and NMSA 1978, Section 9-1-5(B)(11) (1977), found in the New Mexico Executive Reorganization Act, NMSA 1978, §§ 9-1-1 to -13 (1977, as amended through 1983). The Executive Reorganization Act creates an executive cabinet headed by the governor and a cabinet department structure. Sections 9-1-3, -4. The principal unit of the executive branch is a "cabinet department" headed by a "secretary" who is appointed by the governor. Sections 9-1-2, -3(A), (B)(1). Among several express duties of the secretaries, who are executive cabinet members, are the specific duties to "advise the governor on problems of state government[,]" to "recommend methods of interagency cooperation[,]" and to "assist the governor in defining policies and programs to make the government responsive to the needs of the people." Section 9-1-3(A), (B)(1), (4), (7). The governor is required to call meetings of the executive cabinet and "seek the advice of the cabinet members." Section 9-1-3(C).

**{8}** Relying on *Black's Law Dictionary*, (5th ed. 1979), the district court found that "recommending" and "advising" were synonyms. Thus, the court implicitly acknowledged that the position of personnel director is an "advisory" one. "Even so," the court reasoned, in comparing the position of personnel director with the executive cabinet positions, "what and to whom [Ms. Perez] advises do not make her position 'major.' " The court noted that unlike members of the executive cabinet, Ms. Perez "[did] not advise on 'problems of state government' or 'assist the governor in defining policies and programs to make the government responsive to the needs of the people.' " The court reasoned further that "this comparison demonstrate[s] that [Ms. Perez's] position was not 'major,' but it also show[ed] that when the [L]egislature felt it appropriate to use the word 'advise,' it did."

**{9}** Considering the Legislature's use of the term "major" in Section 51-1-44(A)(5)(a) and continuing to contrast the positions of personnel director and cabinet members, the court observed that "[t]here is no doubt that advising the [g]overnor[] is 'major.' " The court supported this observation by noting that cabinet secretaries are required to post a twenty-five-thousand-dollar bond, yet the personnel board and director are not required to post any bond, "most probably because they do not directly advise the [g]overnor and are therefore not thought of as occupying 'major' or critical positions." *See* § 9-1-5(B)(11) (setting out the bond amounts for department secretaries). Further, the court noted that the various "principal unit[s]" of the executive branch and the heads of those units were set out in Section 9-1-4(A) of the Executive Reorganization Act, but that nothing in this section depicted boards and their directors. *See id.* (stating that "the principal unit of the executive branch is a 'department,' headed by a 'secretary' "; "the principal unit of a 'department' is a 'division,' headed by a 'director' "; "the principal unit of a division is a 'bureau,' headed by a 'chief' "; and "the principal unit of a bureau is a 'section,' headed by a supervisor' ").

5

And, finally, the court noted the "limited number of cabinet secretaries" in comparison with the "over one hundred . . . statutorily created boards and commissions, . . . each with any number of employees [who make] recommendations to them." From this observation, the court concluded that were it to read Section 51-1-44(A)(5)(a) as the Board of Review read it, all employees that make recommendations to their respective boards and commissions would hold major advisory positions, disentitling them to unemployment compensation, rendering meaningless the Legislature's "intentional use of the word 'major' " in Section 51-1-44(A)(5)(a).

**{10}** In conclusion, the district court stated that:

> Rather than explore [Ms. Perez's] statutory duties, the Board of Review based its decision on the statements of an individual who knew that on occasion [Ms. Perez] may have exceeded her duties. Section 51-1-44(A)(5)(a), however, requires an examination of the employee's position pursuant to statute. Based on that examination, [Ms. Perez] did not occupy a major policy-making position. She advised a board on rules, but she did not advise the governor on problems of state government. The entity she advised was not a member of the cabinet, and its only direct contact with the governor was through presentation of an annual report at the end of each year. . . . [Section] 10-9-10(F)[.]

Consequently, the district court reversed the Board's decision and ordered that Ms. Perez was entitled to unemployment benefits.

**STANDARD OF REVIEW**

**{11}** We focus on the administrative decision-makers' rulings and rationales. Our standard of review is the same as that required of the district court. *See San Pedro Neighborhood Ass'n v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 2009-NMCA-045, ¶ 11, 146 N.M. 106, 206 P.3d 1011 ("We will conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." (alteration, internal quotation marks, and citation omitted)); *see also* NMSA 1978, § 51-1-8(N) (2004, amended 2013) (relating to decisions by the secretary or board of review appealable to the district court); NMSA 1978, § 39-3-1.1 (1999) (relating to final decisions by state agencies appealable to the district court); Rule 1-074(A), (R) NMRA (relating to statutory review by district court of administrative decisions or orders); Rule 1-077(J) NMRA (relating to appeals pursuant to unemployment compensation laws).

**{12}** We review whether the administrative decision-makers acted fraudulently, arbitrarily, or capriciously; whether, based upon a whole-record review, the administrative decisions were supported by substantial evidence; whether the decision-makers abused their discretion by acting outside the scope of authority; and whether the administrative decisions were

6

otherwise not in accordance with law. *San Pedro Neighborhood Ass'n*, 2009-NMCA-045, ¶¶ 10-11. "The decision of the agency will be affirmed if it is supported by the applicable law and by substantial evidence in the record as a whole." *Fitzhugh v. N.M. Dep't of Labor*, 1996-NMSC-044, ¶ 24, 122 N.M. 173, 922 P.2d 555. In the case now before us, we review only whether the administrative decisions were in accordance with law.

**{13}** On appeal to this Court, the parties discuss the evidence in relation to both a policymaking and an advisory position. As we have indicated, however, we see nothing in the administrative decisions that indicates any determination relating to a policymaking position. The sole issue on review is whether state law designates the position of personnel director to be a major advisory position.

**DISCUSSION**

**{14}** As we have noted, Section 51-1-44(A)(5)(a) states that an employee is not eligible for unemployment compensation benefits if she is "in a position which, under or pursuant to state law, is designated as . . . a major . . . advisory position[.]" Analysis of whether the position of personnel director is "a position which, under or pursuant to state law, is designated as . . . a major . . . advisory position[,]" requires the interpretation of three key terms used in Section 51-1-44(A)(5). Specifically, we must consider what the Legislature intended to convey by its inclusion of the terms "designated," "major," and "advisory position" in the context of Section 51-1-44(A)(5). We turn first to the Legislature's use of the term "designated."

**Interpretation of "Designated"**

**{15}** It is reasonable to assume that the Legislature's use of the term "designated" in the phrase "designated as a . . . major . . . advisory position" was in part intended to create a standard by which to measure whether a potential employee would, by reading the statutorily prescribed duties of a position, be placed on notice that his or her position was not covered employment for the purposes of unemployment compensation. This purpose was explained in *Conroy v. Unemployment Compensation Board of Review*, 693 A.2d 254, 256-57 (Pa. Commw. Ct. 1997).

> The logic of the [l]aw . . . is plain. The exclusion imposes ineligibility on the basis that any occupant of such a position can anticipate the possibility of job termination upon a change of administration, so that unemployment in such circumstances cannot be regarded as sudden and unexpected. The required official designation hence provides a basis for that expectation; when the nature of the position is designated by law, there is thus an official signpost which informs the jobholder, upon assuming the position, of what can be expected.

(Omission in original.) (Alteration, internal quotation marks, and citation omitted.) We

7

conclude that in the phrase "designated as . . . a major . . . advisory position[,]" the concept of designation is a reference to the statutorily described job duties, which, when read by a prospective employee should alert her to the nature of the position, including whether the position is "major" and "advisory."

**{16}** Nothing in Section 51-1-44(A)(5)(a) indicates that the Legislature intended "designated" to mean the position-holder's actual activities in carrying out the duties of the position. *See Zerbe v. Unemployment Comp. Bd. of Review*, 681 A.2d 740, 743-44 (Pa. 1996) (stating that "[n]othing in the language of [the unemployment compensation statute] require[d] a factual determination as to whether the . . . claimant actually performed major policymaking or advisory functions" and stating further that "[c]learly, our legislature has decided that it is the *designation* which is controlling as to whether a government employee is eligible for unemployment compensation benefits upon loss of employment"); *Odato v. Unemployment Comp. Bd. of Review*, 805 A.2d 660, 662 (Pa. Commw. Ct. 2002) (stating that the claimant's "actual job activities [were] immaterial to the determination of whether he [was] entitled to unemployment benefits"). Nor do we believe that our Legislature intended the compensation determination to be made on the basis of the extent to which and manner in which an employee engaged in activities.

**Interpretation of "Advisory"**

**{17}** Ms. Perez argues that state law must specifically name the position in question, that of personnel director for example, to be a major advisory position. She further argues that the designation must include the word "advisory." We disagree. Instead, we read "designated" to include advisory duties and responsibilities necessarily implied from the designation. *Cf. Odato*, 805 A.2d at 663 (reversing the denial of the employee's unemployment benefits because the statute, which "set[] forth only a functional description of job duties" did not "reveal any responsibility for [policymaking] or service in an advisory role" and therefore failed to inform the employee what he could expect upon taking the position); *Conroy*, 693 A.2d at 256 ("It is not necessary that the designation contain the precise words 'major' or 'policymaking' or 'advisory,' although it can be done that way." (citation omitted)). Nevertheless, "[i]t must, at a minimum, be a written statement of policy which has the clear and intended effect of establishing the . . . employment status attached to the position." *Id.* at 257.

**{18}** We now turn to the question whether, under or pursuant to Section 10-9-12(A), (E), and (F), the designation of the personnel director position is one of an advisory position and gives notice to a prospective personnel director that the particular duties and responsibilities enumerated in Section 10-9-12 come within the intended meaning of "advisory position." Although the administrative decision-makers made their determinations based on actual activities, their decisions were apparently governed by Subsection (A)'s generally stated duty to "supervise all administrative and technical personnel activities of the state" and Subsection (E)'s generally stated duty to "recommend to the board rules [that she] considers necessary or desirable to effectuate the Personnel Act[.]" Section 10-9-12(A), (E). We

8

observe that the Appeals Tribunal's administrative findings quoted Section 10-9-12(E) and Regulation 1.7.1.8(A) NMAC, which mimics Section 10-9-12(A).

**{19}** We do not believe that the Legislature's omission of the term "advisory" from Section 10-9-12 is indicative of the Legislature's intent to exclude the position of personnel director from the purview of Section 51-1-44(A)(5)(a). It is noteworthy that "supervise" is synonymous with direct, manage, govern, regulate, oversee, and guide. *Roget's Int'l Thesaurus* ¶¶ 693.2, .4, .5, at 481-82 (7th printing 1951); *see also* http://thesaurus.com/browse/supervise (describing "supervise" being synonymous with, among other things, administer, be in charge, be responsible for, control, direct, oversee, preside over, and superintend). Synonyms for "advise" are "admonish, caution, counsel, consult, forewarn, inform, notify, [and] recommend[.]" *The New Int'l Webster's Pocket Thesaurus of the English Language* (hereinafter *Webster's*) 16 (1997). "Advice" means "[g]uidance offered by one person . . . to another." *Black's Law Dictionary* 63 (9th ed. 2009); *see also Webster's*, *supra*, 16 (stating that "advice" is synonymous with "counsel, guidance, lesson, [and] suggestion"). "Recommend" can mean "advise or counsel." *Black's Law Dictionary* 1436 (Rev. 4th 1968); *see also* http://thesaurus.com/browse/recommend (describing "recommend" being synonymous with, among other things, acclaim, advance, advocate, counsel, justify, propose, steer, suggest, and urge); *Webster's*, *supra*, 247 (stating that "recommend" is synonymous with "commend, praise, endorse, suggest, prescribe, urge, [and] advise").

**{20}** A reasonable conclusion to be drawn from the personnel director's statutorily designated statewide duties is that they necessarily include advising the board and all government employees and agencies that come within the Personnel Act in regard to personnel matters. In particular, by its use of the terms "supervise" and "recommend" in the context of Section 10-9-12(A) and (E), the Legislature expressed its intent that the personnel director was expected, if not required, to advise state agencies covered under the Personnel Act in regard to any number of "problems" and issues that may arise throughout state government with respect to employees. Likewise, by requiring the personnel director to "recommend" rules to the board, we believe the Legislature contemplated that the personnel director would advise the board regarding the adoption of personnel-related rules affecting all state employees covered by the Personnel Act. Thus, notwithstanding the Legislature's omission of the term "advisory" from Section 10-9-12, its use of synonyms thereof evoke a clear sense of the "advisory" nature of the position of personnel director such that a prospective candidate for the position would expect that position to come within the purview of "advisory" in Section 51-1-44(A)(5)(a). *See Conroy*, 693 A.2d at 256-57 (explaining the purpose behind designating positions as major policymaking or advisory). Turning to dictionary definitions and synonyms is one method of attempting to understand what the Legislature intended by words that it uses. *See, e.g.*, *Tri-State Generation Transmission Ass'n v. D'Antonio*, 2012-NMSC-039, ¶¶ 18-20, 289 P.3d 1232 (recognizing that the dictionary is a useful tool in the analysis of legislative intent because it provides the ordinary meaning of the Legislature's chosen terms); *State ex rel. Gaming Control Bd. v. Ten Gaming Devices*, 2005-NMCA-117, ¶ 12, 138 N.M. 426, 120 P.3d 848 (relying on synonyms and

dictionary definitions to determine legislative intent). Dictionary definitions and synonyms do not end the discussion. But as the statute reads and under the circumstances here, we conclude that our approach in understanding legislative intent is reasonable and practical and that any narrowing or detailing of meaning should be left to the Legislature.

**Interpretation of "Major"**

**{21}**    The final question and the more difficult one is whether the advisory aspect of the position reaches the status of "major." The analysis in regard to what constitutes "major" finds little, if any, guidance in the language of Section 51-1-44(A)(5)(a). The word "major" has several dictionary meanings. Closest for the purpose of this case are "greater in number, extent, or importance" and "notable or conspicuous in effect or scope[.]" *The Merriam-Webster Dictionary* 296 (2005). Synonyms of the term "major" include "important, significant, main, [and] principal." *Webster's*, *supra*, 194. In our view, the personnel director's statewide personnel supervisory duty and the personnel director's role of recommending rules relating to administration of the Personnel Act constitute duties that are notable, conspicuous in effect and scope, important, and significant. As such, the statutory duties of the personnel director come within the meaning of "major."

**{22}**    Ms. Perez fails to point to any place in the record where she provided to the administrative decision-makers or to the district court any instances in which any positions in government other than those of executive cabinet secretaries carried express policy or advisory designations under or pursuant to state law at all comparable to those in Section 10-9-12. The dissent points to none. Further, although not critical to our decision, on the issue of whether Section 51-1-44(A)(5) should pertain solely to persons who can be appointed or whose positions can be terminated only by the governor or perhaps another member of the executive cabinet, it is important to note that the governor has substantial control over the decision as to who will be hired to the position of personnel director. As discussed earlier in this Opinion, the personnel board, which is appointed by the governor, is tasked with hiring a personnel director, and final say as to the hiring decision rests with the governor. *See* §§ 10-9-8, 10-9-10(C). Further, and nowhere contested by Ms. Perez, the Appeals Tribunal entered the following findings of fact.

> 4.      The claimant was nominated to the position of director by the (then) governor along with two other candidates also nominated by the governor. The State Personnel Board . . . appointed the claimant as director in July 2004 and her appointment was approved by the governor.

> . . . .

> 9.      The claimant filed for unemployment benefits . . . . In the claimant's statement . . . she indicated "As an exempt employee in an at will status, I work at the pleasure of the governor and the governor found

10

another State Personnel Director."

Thus, to the extent that the exclusion in Section 51-1-44(A)(5) is grounded in electoral politics and permits new administrations to "pick their own" to hold major nontenured advisory positions, we see little distinction to be drawn between the governor's direct appointment of cabinet secretaries and the governor's recommendation of an up or down vote as to who may be hired as personnel director, particularly when the candidate is selected by the governor's hand-picked personnel board members, not to mention Ms. Perez's own statement that she worked at the pleasure of the governor and the governor replaced her.

**In Sum**

**{23}** As the statute reads, courts are to address positions as they are designated under or pursuant to state law. The only designations before the administrative decision-makers, the district court, and this Court were that of personnel director and those of the executive cabinet members. The record was not developed in a manner that can permit even speculation in regard to designations of positions of persons employed or appointed by various boards or commissions or executive functionaries in the state. There exists no basis for wonder about other jobs that have no designations. Other than those of executive cabinet members, none were presented for comparison or contrast. The personnel director has statutorily designated duties. Although Section 10-9-12 does not expressly and specifically state that any duty is "advisory," embedded in the personnel director's broad supervisory duties and duty to recommend rules is obviously a duty and responsibility to advise state government officials, employees, and agencies at all levels of state government in regard to personnel matters within the purview of the Personnel Act and to assist the board in considering rules and regulations for statewide administration of the Personnel Act. Considering the critical importance of personnel in and throughout state government, these duties and responsibilities can be considered major ones. The dissent's assertion that the personnel director is to oversee a system designed to treat the ill of mass employment change upon changes in administration does not, in our view, constitute a rational basis on which to read the position out of the Section 51-1-44(A)(5) exclusion.

**{24}** On a final note, in regard to the Legislature's use of the term "major" in Section 51-1-44(A)(5)(a), for the benefit of future tribunals faced with the interpretation of this section, we reject the reasoning employed by the district court. The district court's analysis is that "major" under Section 51-1-44(A)(5)(a) should necessarily be limited to cabinet members because of their advisory duties vis-a-vis the governor and perhaps also to possible advisory duties of the lower executive branch employees mentioned in Section 9-1-4(A) who do not have a close advisory position in regard to the governor. We cannot accept this rationale. We see no reason why a personnel director cannot be considered to hold a major advisory position when (1) she is the administrative director of a governmental office in charge of Personnel Act matters throughout the entirety of state government; (2) she must supervise and advise other employees, agencies, departments, divisions, bureaus, sections, boards, and commissions in regard to personnel issues and problems; and (3) she must recommend and

11

advise the entity responsible for adopting rules for administration of the Personnel Act. Furthermore, we cannot accept a rationale that the personnel director should be entitled to unemployment compensation, yet, as implied in the district court's decision, such compensation should be denied to a director of a division, a chief of a bureau, and a supervisor of a section simply because these units of government are named in Section 9-1-4(A) of the Executive Reorganization Act and may consist of a considerably fewer number of employees than exist in the world of boards and commissions. The application of "major" to an advisory position requires a case-by-case, position-by-position, designation-by-designation analysis.

{25}    We hold that advisory duties and responsibilities stemming from the express duties found in Section 10-9-12 fairly come within the language "designated as" in Section 51-1-44(A)(5). We further hold that the personnel director's broadly designated duties to supervise and recommend along with the director's advisory responsibilities can be considered major because they are notable, conspicuous in effect and scope, important, significant, and a major part and aspect of the personnel director's full gamut of duty. Thus, the administrative decision-maker's ruling denying Ms. Perez's unemployment benefits pursuant to Section 51-1-44(A)(5)(a) was in accordance with the law and is hereby affirmed. *See Fitzhugh*, 1996-NMSC-044, ¶ 24 (stating that the administrative decision-maker's determination will be affirmed if it is supported by the applicable law).

## CONCLUSION

{26}    The administrative decision-makers did not err in denying Ms. Perez unemployment compensation. We reverse the district court and affirm the determination of the Appeals Tribunal adopted by the Board of Review.

{27}    **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**I CONCUR:**


_____
**LINDA M. VANZI, Judge**

**MICHAEL D. BUSTAMANTE, Judge (dissenting).**

**Bustamante, Judge (dissenting)**

{28}    I respectfully dissent. In my view the majority Opinion does not sufficiently honor the policy considerations that underlie the exclusion.

**{29}** Though the majority is correct that the focus should be on the "designated" nature of the position itself, the Opinion does not carry the analysis far enough. As the majority notes, the designation of a position should be sufficiently clear to place an employee on notice that the position is "not covered employment for the purposes of unemployment compensation." *See* Majority Opinion ¶ 15. The Opinion does not delve into the policy reasons that would support excluding a position from coverage.

**{30}** The best, most historically and administratively grounded explanation for exclusion from coverage I have found comes from *Gahres v. Commonwealth*, 433 A.2d 152, 154 (Pa. Cmmw. Ct. 1981). The *Gahres* court stated:

> The logic of such a requirement is plain. The exclusion imposes ineligibility on the basis that any occupant of such a position can anticipate the possibility of job termination upon a change of administration, so that unemployment in such circumstances cannot be regarded as sudden and unexpected. The required official designation hence provides a basis for that expectation; when the nature of the position is designated by law, there is thus an official signpost which informs the jobholder, upon assuming the position, of what can be expected.

433 A.2d at 154.

**{31}** The passage's emphasis on job termination tied to a "change of administration" grounds the exclusion in electoral politics. Administrations have the right to ensure that their policymakers and advisors carry out the goals of that administration. As such, they should be able to pick "their own" to hold those positions. In turn, people holding such positions should be aware that they can be replaced at any time and should expect to be replaced with changes in administration. This rationale for exclusion from unemployment compensation makes sense and provides a guide for assessing whether a position's designation gives sufficient notice to an employee.

**{32}** As the district court noted, positions such as cabinet secretaries are obviously—almost inherently—political in nature and the Legislature rather clearly labeled them as such. The difficulty arises when one considers positions—such as Ms. Perez's—which are not so obviously political. How are the courts to decide whether they should be subject to exclusion from coverage? I submit that courts should err on the side of caution and limit the number and type of positions subject to the political winds.

**{33}** In my view the majority Opinion is not appropriately cautious in its policy choice. Section10-9-12 describes an important position in state government but there is nothing in the description which obviously indicates that the holder of the position should be subject to change as a consequence of election results. The Opinion goes astray with its emphasis on dictionary definitions of "advice" and "recommend." Rhetorically speaking, what position of any consequence does not involve giving advice and making recommendations?

13

Are all such jobs to be subjected to the exclusion simply because they include those functions? The question answers itself.

{34}    A better approach to the problem is to be found in the *Conroy* case that the majority cites with approval. *Conroy* involved a claim for unemployment compensation by a former borough police chief. The former chief wrote, and the borough counsel adopted, the manual of policy and procedures for the police department. 693 A.2d at 255. The manual included a description of the police chief's position which explicitly included policymaking and advisory duties. *Id.* There, as here, the employer argued that the position description as adopted by the borough constituted a designation of a major policymaking and advisory position. *Id.* at 256. The court in *Conroy* disagreed, finding the borough's "analysis insufficient, as it does not consider the underlying purpose of the [l]aw." *Id.* Relying on and quoting from *Gahres*, the *Conroy* court concluded that to come within the exclusion the designation would have to be more than a functional description of the job. *Id.* at 257. It would have to clearly relate to job security and establish job terms and employment status as it relates to a change in administration. *Id.* Applying the approach followed in *Conroy* leads to affirmance of the district court.

{35}    The purpose of the Personnel Act is to "establish for New Mexico a system of personnel administration based solely on qualification and ability[.]" Section 10-9-2. The aim of the Personnel Act was to limit to the extent possible the practice of wholesale changes in state employment after elections. Persons of a certain age will recall the difficulties attendant to government employment ruled by patronage and the old "spoils" system. The personnel director's job is to oversee the system that put a stop to those difficulties. It seems to me eminently good policy not to subject the position to even the restrained version of political influence that necessarily persists.

————————————————
**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for *Perez v. N.M. Dep't of Workforce Solutions*, Nos. 32,330/32,321**

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal
Arbitrary and Capricious Actions
Judicial Review
Legislative Intent
Standard of Review
Sufficiency of Evidence

**EMPLOYMENT LAW**
Unemployment Compensation

**GOVERNMENT**

Executive Branch
Public Employee

**PUBLIC ASSISTANCE**
Unemployment Compensation

**STATUTES**
Legislative Intent