643 A.2d 1158

**CITY OF PHILADELPHIA, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 1994.

Decided June 8, 1994.

Michael F. Eichert, for petitioner.

Cliford F. Blaze, Deputy Chief Counsel, for respondent.

Joseph P. Maher, for intervenor John Plonski.

Before McGINLEY, and SMITH, JJ., and KELTON, Senior Judge.

SMITH, Judge.

The City of Philadelphia (City) petitions for review of the order of the Unemployment Compensation Board of Review (Board) which reversed the referee and determined that John Plonski (Claimant) was eligible for unemployment compensation benefits. The City questions whether the record

establishes that Claimant's former position as Water Commissioner for the City was designated as a major nontenured policymaking or advisory position, thus rendering Claimant ineligible for benefits under Section 1201(b)(9) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* added by the Act of September 27, 1971, P.L. 486, 43 P.S. § 911(b)(9).[1]

After hearings before the referee and further proceedings before the Board, the Board made the following findings of fact:

1. Claimant was last employed as a Commissioner of the Water Department by the City of Philadelphia for three years at a final rate of $85,000 per year and his last day of work was February 6, 1992.

2. Claimant supervised a department of 2300 persons and supervised a budget of $150,000,000.

3. Claimant served at the pleasure of the water authority, the mayor or the managing director of the city.

4. Claimant was responsible for the water fund, the operating budget and water rates.

5. Claimant made all final decisions for his agency.

6. The claimant's position was not formally designated a major nontenured policy making [sic] and was not an advisory or a policy making position which involved less than eight hours of work per week.

The Board concluded that Claimant was not financially ineligible for benefits under the provisions of Section 1201(b)(9) of the Law because Claimant's position was not specifically designated as a major nontenured policymaking or advisory position, "despite some facts indicative that his position was policy making in a long and/or legal content." Board Opinion, p. 2.

---

1. Section 1201(b) excludes from coverage, inter alia, "[i]ndividuals serving in positions which, under or pursuant to the laws of this Commonwealth, are designated as (i) a major nontenured policymaking or advisory position, or (ii) a policymaking position the performance of the duties of which ordinarily does not require more than eight hours per week."

The Board reversed the referee's determination and granted benefits to Claimant.

The City argues that the record, and specifically the Philadelphia Home Rule Charter (Charter), 351 Pa.Code §§ 1.1-100–12.12–503, as well as Claimant's own testimony, establish that his former position was a major nontenured policymaking or advisory position within the purview of Section 1201(b)(9) of the Law.[2] In *Lynn v. Unemployment Compensation Board of Review*, 142 Pa.Commonwealth Ct. 235, 597 A.2d 211 (1991), this Court held that the Section 1201(b)(9) exclusion applies to positions that are designated as policymaking or advisory positions, although the precise words "major," "policymaking," or "advisory" are not required. *See also Gahres v. Unemployment Compensation Board of Review*, 61 Pa.Commonwealth Ct. 114, 433 A.2d 152 (1981). It is enough that a statute, regulation, executive order, or the like communicate the concept that the position is policymaking or advisory. *Department of Labor & Industry v. Unemployment Compensation Board of Review*, 61 Pa.Commonwealth Ct. 107, 433 A.2d 156 (1981) (interpreting the precursor to Section 1201(b)(9) which contained identical language).

The Charter creates the Philadelphia Water Department, 351 Pa.Code § 3.3–100, and establishes that the Water Commissioner shall be the department head and shall exercise the powers and perform the duties vested in and imposed upon the department, 351 Pa.Code § 3.3–101. Pursuant to 351 Pa.Code § 3.3–404, the Water Commissioner serves at the pleasure of the appointing power and until a successor is qualified. The managing director of the City shall appoint the Water Commissioner, with the approval of the Mayor. 351 Pa.Code § 3.3–206(a).

Specifically regarding the Water Department, the Charter provides the following:

**2.** This Court's scope of review in unemployment compensation cases is to determine whether the findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. *E.B.S. v. Unemployment Compensation Board of Review*, 150 Pa.Commonwealth Ct. 10, 614 A.2d 332 (1992).

## § 5.5–800. Functions.

The Water Department shall have the power and its duty shall be to perform the following functions:

(a) *Water.* It shall operate the City's water supply system, and shall either itself, or by contract, construct, maintain, repair and improve City water supply facilities, including fire and drinking hydrants and water meters. It shall make investigations and prepare plans and estimates looking towards the acquisition by the City of new and better sources of water supply, and shall, with the approval of the Managing Director, make its recommendations to the Mayor for transmission to the Council. It shall also investigate and adopt methods for improving the quality of the water supply.

(b) *Sewage and Sewage Disposal.* The Department shall operate, and itself, or by contract, maintain, repair and improve the City's sewage system and sewage disposal plants. When authorized by the Council, it shall acquire, design and construct additional sewage disposal plants and sewage facilities.

## § 5.5–801. Rates and Charges.

In accordance with such standards as the Council may from time to time ordain, the Water Department shall fix and regulate rates and charges for supplying water, including charges to be made in connection with water meters, and for supplying sewage disposal services. The standards pursuant to which rates and charges shall be fixed by the Department shall be such as to yield to the City at least an amount equal to operating expenses and interest and sinking fund charges on any debt incurred or about to be incurred for water supply, sewage and sewage disposal purposes. In computing operating expenses, there shall be included proportionate charges for all services performed for the Department by all officers, departments, boards or commissions of the City.

## § 5.5–802. Users Outside the City

When authorized by the Council, the Water Department may enter into contracts for supplying the services of City water and sewer and sewage disposal facilities to users outside the limits of the City.

Under the Charter, the heads of all departments, boards, and commissions are empowered to prescribe rules for their internal government. 351 Pa.Code § 8.8–406. Furthermore, each department is "empowered to make such reasonable regulations as may be necessary and appropriate in the exercise of its powers and the performance of its duties under this charter or under any statute or ordinance." 351 Pa.Code § 8.8–407.

In *City of Philadelphia v. Unemployment Compensation Board of Review,* 68 Pa.Commonwealth Ct. 147, 448 A.2d 687 (1982), this Court affirmed a Board determination that the executive director of the Philadelphia Civic Center was not employed in a major nontenured policymaking or advisory position and was thus entitled to benefits. In so doing, the Court examined the Charter for a specific description of the duties and functions of the claimant's position and found that, under the Charter, he was not responsible for setting any policy and held no major advisory position. In contrast, examination of the relevant Charter provisions in the present matter reveals language which reaches the level of an official designation of the position as a major policymaking or advisory one. Therefore, the City met its burden of proving that Claimant's position was officially designated as noncovered employment. *See Bowe v. Unemployment Compensation Board of Review,* 83 Pa.Commonwealth Ct. 221, 477 A.2d 587 (1984).

The instant case also stands in contrast to *Department of Labor & Industry,* in which no statute or regulation was cited that created or described the position which the claimant occupied, and claimant's position was clearly confined to "the internal functions and housekeeping machinery of the department, which, although undoubtedly important, do not constitute substantive policy having public effect." *Id.,* 61 Pa.Com-

monwealth Ct. at 110, 433 A.2d at 158.[3]   Because the Board
sub judice erred in its determination that Claimant was not
ineligible for benefits, its order is accordingly reversed.

■   In his brief as Intervenor, Claimant argues that the
City waived its right to raise on appeal the legal issue of the
status of Claimant's employment by not previously raising the
issue at the time of his initial application.   In the notice of
final determination dated January 15, 1992 and a February 25,
1992 revised notice mailed to Claimant by the Bureau of
Unemployment Compensation Benefits and Allowances (Bu-
reau), the form letters merely notified Claimant that he was
not financially eligible for benefits based on the wages he was
paid and the credit weeks he earned during the base year.
Claimant contends that these notices demonstrate that the
Bureau's determination of financial ineligibility was based
solely upon the issue of insufficient wages during his base
year, and not upon the nature of his position.   However, in a
February 5, 1992 memorandum regarding the City's separa-
tion information, the Bureau indicated that Claimant's wages
earned in his position were not covered "under the meaning of
Article X or XII of the Pennsylvania UC Law, and may not be
used to determine financial eligibility."   Article XII of the
Law includes the exclusionary Section 1201.   It is therefore
clear what the basis was for the Bureau's denial of benefits,
and there is no indication in the record that the City at any
point waived the issue regarding Claimant's position.[4]

3.   Furthermore, several cases cited by the parties are inapposite because
they address positions that had been officially designated as major
nontenured policymaking or advisory positions by management di-
rectives issued on behalf of the governor; *Mormak v. Unemployment
Compensation Board of Review*, 135 Pa.Commonwealth Ct. 232, 579
A.2d 1383 (1990) (executive director of Insurance Department Cata-
strophic Loss Trust Fund); *Ging v. Unemployment Compensation Board
of Review*, 84 Pa.Commonwealth Ct. 244, 479 A.2d 37 (1984) (assistant
Attorney General); and *Bowe* (director of Bureau of Policy Planning,
Department of Community Affairs).

4.   In addition, Claimant filled out a Bureau questionnaire in the follow-
ing manner: when asked to briefly describe his duties and responsibili-
ties in his former position, Claimant stated he was chief executive
officer of the Water Department responsible for overall management of
all aspects of the Department; Claimant stated that he was afforded a

Further examination of Claimant's brief reveals that the true issue he raises is one of alleged defective notice on the part of the Board. Upon Claimant's timely appeal from the Bureau's determination, the Board issued a notice of hearing dated July 2, 1992 which stated that the specific issue to be considered in this appeal was No. 35 on an attached list of issues, which reads "Section 404—Whether claimant was paid the qualifying amount of wages in subject employment." In a subsequent July 23, 1992 hearing before the referee, Claimant asserted that he was not aware until that morning that "there was any kind of problem with this case based on any certain employment."[5] On August 12, 1992 the referee issued her decision that Claimant was ineligible for benefits because he served in a position which was designated as a major nontenured policymaking or advisory position. Claimant's timely appeal to the Board was made on the basis that, inter alia, the referee erred in allowing testimony on the issue of the nature of Claimant's position, an issue which was not contained in the July 2, 1992 notice of hearing.

In response, the Board directed that the referee conduct a further hearing for the Board at which the referee should limit testimony to the issue of whether Claimant is ineligible under Section 1201(b)(9) or other sections deemed relevant. The Board thereafter issued notices of hearing directing that the specific issues to be considered in the appeal included the applicability of Section 1201. The referee held a hearing on

"great degree" of administrative discretion and responsibility in his position; when asked the extent of the impact of decisions made in his position, Claimant stated "final decisions made by me"; and Claimant indicated that the Charter regulations governed his responsibilities.

5. However, on April 1, 1992, Claimant sent a letter to the Pennsylvania Job Service requesting that his appeal hearing be moved from Philadelphia since he believed he could no longer get a fair hearing because of a March 31, 1992 newspaper article, which Claimant enclosed with the letter. The article quoted a statement by the City's deputy director of personnel that the City did not believe Claimant was eligible for benefits because state law governing unemployment excludes policymakers and Claimant was a nontenured policymaker. While the newspaper article certainly does not afford adequate legal notice, Claimant's clear awareness of the City's position nevertheless impugns the credibility of his statements before the referee.

the issue on December 10, 1992, and based on the testimony presented at this hearing, the Board issued its decision which is the subject of the instant appeal.

By issuing its corrected notices of hearing directing the referee to take testimony on the Section 1201 issue, the Board thus cured any defects in the original notice of hearing sent to Claimant. A referee on appeal may consider only those charges delineated in the hearing notice. *Staub v. Unemployment Compensation Board of Review,* 90 Pa.Commonwealth Ct. 94, 494 A.2d 65 (1985). In the matter sub judice, the referee considered only the issues set forth in the Board's corrected notice of hearing and thus did not err in taking testimony on the question of the nature of Claimant's position with the Water Department. Claimant's arguments are therefore without merit.

For the reasons discussed, the order of the Board is reversed.

## ORDER

AND NOW, this 8th day of June, 1994, the order of the Unemployment Compensation Board of Review is reversed.