Robert E. Ihlein,                                    :
                        Petitioner                   :
                                                     :
          v.                                         :
                                                     :
Unemployment Compensation                            :
Board of Review,                                     :          No. 1402 C.D. 2017
                        Respondent                   :          Submitted: April 12, 2018


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED:  May 8, 2018


          Robert E. Ihlein (Claimant) petitions for review of the decision and order of the Unemployment Compensation Board of Review (Board), which affirmed the determination of the Referee, concluding that Claimant as Manager of the Borough of Lemoyne (Manager) held a major nontenured policymaking or advisory position rendering him ineligible for benefits.  After review, we affirm.

          Claimant was employed, full time, as the Manager for the Borough of Lemoyne (Employer) from April 1, 2009 through January 9, 2017.  Certified Record (C.R.) Item No. 9; Transcript of Testimony, 7/5/17 (T.T.) at 4.  The Borough of Lemoyne Code of Ordinances creates the Manager position.  BOROUGH OF LEMOYNE, PA., CODE OF ORDINANCES, §§ 1-201-1-207 (1991) (Ordinance).

Specifically, the Ordinance provides that the Manager shall be appointed by a majority of all Council members to serve an indefinite term "at the pleasure of the Council." *Id.* at § 1-202. The Council must select a Manager "solely" on the basis of his or her executive and administrative abilities giving special consideration to the duties of the office. *Id.* at § 1-203. The Manager's salary is fixed from time to time by the Council. *Id.* at § 1-205. The Council may remove the Manager at any time by a majority vote of all members. *Id.* at § 1-202. Prior to removing the Manager, the Council shall provide, at least 30 days in advance, a written statement to the Manager setting forth its intention to remove him or her from the position. *Id.*

The Manager acts as the "chief administrative officer" of the Borough and is responsible to the Council to properly and efficiently manage all Borough affairs. *Id.* at § 1-206. As chief administrative officer, the Manager must supervise and be responsible for the activities of all municipal departments, except the police department and other departments excluded by Council action, and must "[s]ubmit all recommendations and applications for employment to the Council for its decision to fill vacancies or to add new employees." *Id.* at § 1-206A-B.

The Manager must attend all Council and committee meetings and has the right to take part in meeting discussions, *id.* at § 1-206F, prepare the agenda for each Council meeting (with the approval of the Council president), *id.* at § 1-206I, and notify all members of all Borough boards, commissions, committees and authorities of all regular and special meetings. *Id.* at § 1-206G. He or she must keep the Council informed as to the conduct of Borough affairs,[1] submit periodic

---

[1] To do this, the Manager must have an active role in the conduct of Borough affairs. The Manager must hold such municipal offices or head any municipal departments as directed by the Council. Ordinance at 1-206E. With the Council's approval, the Manager may employ experts

2

reports on the condition of the Borough finances,[2] and provide such other reports as requested by Council. *Id.* at § 1-206H.

The Manager must "make such recommendations to the Council" as he or she deems necessary, *id.* at § 1-206H, and must "[c]ooperate with the Council at all times and in all matters so that the best interest of the Borough and of the general public may be maintained." *Id.* at § 1-207T.

In the present matter, after Claimant's employment as Manager of the Borough ended,[3] Claimant filed a claim for unemployment compensation benefits. C.R. Item No. 2, Internet Initial Claims form. The Duquesne Unemployment Compensation Service Center (Center) determined Claimant to be financially ineligible for benefits.[4] C.R. Item No. 5, Notice of Financial Determination, 5/9/17.

---

and consultants to perform work and render advice in connection with the Borough. *Id*. at § 1-206K. The Manager is to receive all complaints regarding the services or personnel of the Borough and must either investigate or designate an officer to investigate and dispose of such complaints and report the resolution to the Council. *Id*. at § 1-206S.

[2] The Manager must prepare and submit to the Council a budget for the next calendar year. Ordinance at § 1-206C. The Manager must submit the proposed budget to the Council in sufficient time that the Council may "consider and adopt the budget and related tax ordinances" required by law. *Id.* Once the Council adopts the budget, the Manager is responsible for its administration, *id.* at § 1-206D, and, as noted above, must submit reports to the Council.

[3] The Referee made no findings as to why Claimant's employment ended. Claimant asserts that he had a lack of work and was laid off. C.R. Item No. 2, Internet Initial Claims form at 2, Question 6. The Employer asserts that Claimant quit for personal reasons. C.R. Item No. 3, Record of Oral Interview. Given the issue before this Court, and our ultimate disposition, it is not relevant why Claimant's employment ceased.

[4] The Notice of Financial Determination provided, "[y]our financial eligibility is based on the wages you were paid and the credit weeks you earned during your base year (the first four of the last five completed calendar quarters immediately prior to filing your claim) which is from **OCT 01, 2015** to **SEP 30, 2016**." C.R. Item No. 5, Notice of Financial Determination, 5/9/17 (emphasis in original). Though not expressly referenced in the Notice, the Center relied on Section 401(a)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, which provides, in pertinent part, that "[c]ompensation shall be

Claimant appealed the Center's determination. The Referee held a hearing on the matter, at which an agency representative for the Department of Labor and Industry and Claimant testified.[5]

The agency representative testified that after reviewing Claimant's claim for benefits, the Center initiated an investigation into whether Claimant, as Manager, was eligible for benefits, specifically focusing on whether Claimant had been paid wages for employment as defined by the Unemployment Compensation Law (Law). *See* C.R. Item No. 9, T.T. at 4-5. The representative testified that she reviewed the filings by Claimant and Employer, which were inconsistent as to the nature of the position.[6] *Id.* at 5. Due to the inconsistencies, the representative reviewed the Ordinance to obtain information regarding the position. *Id.* at 5-6. Based on her review of the Ordinance, the representative concluded that the Manager position is a major nontenured policymaking or advisory position, which is not employment eligible for benefits under the Law. *Id.*

Claimant testified that, as Manager, his job was to run the day-to-day business of the Borough and, on occasion, advise the Council on policy. *Id.* at 7. Claimant explained that once the Council, as the governing body, sets the policy

---

payable to any employe who is or becomes unemployed, and who . . . [h]as, within his base year, been paid wages for *employment* as required by section 404(c) of this act." 43 P.S. § 801(a)(1) (emphasis added). At no point in time did Claimant assert that he did not have notice or understand why the Center denied his claim.

[5] Employer did not appear at the hearing. C.R. Item No. 9, T.T. at 1.

[6] Claimant asserted in the Supplemental Information provided on the Internet Initial Claims form that the Manager position was appointed, that he managed the daily business activities of the Borough and that "the office of the Borough Manager does advise Borough Council on policy issues, and once approved, carries them out." C.R. Item No. 2, Internet Initial Claims form at 4. Employer provided that Claimant's position was not a major policymaking or advisory position on its questionnaire. C.R. Item No. 3, State and Local Government Employees Questionnaire Employer Questionnaire at 1.

4

direction, the Manager implements the policy. *Id.* Although the Ordinance provides that the position is appointed, Claimant asserted that the Council posted the job, interviewed individuals and decided whom to hire. *Id.*

After the hearing, the Referee affirmed the Center's determination that Claimant is financially ineligible for benefits concluding that the Ordinance "clearly indicates that this is a non-tenured, appointed position. The duties and functions support the designation of a major policymaking or advisory position. Under these circumstances, the claimant's base-year wages are not covered for establishing financial eligibility. . . ." Referee Decision/Order, 5/22/2017, at 2. Claimant appealed the Referee's decision and order to the Board, which affirmed. In affirming, the Board reasoned:

> Besides indicating that the borough manager was the chief administrative officer for the borough, the . . . Ordinance stated that one of the claimant's functions as borough manager was to 'make such recommendations to the Council as he deems necessary.' This is an advisory role. Also, the claimant was placed on notice by Employer Ordinance that he served 'at the pleasure of the Council' and he could be 'removed at any time by a majority vote of its members.' Thus, the claimant could anticipate the possibility of job termination upon a change of administration, so that unemployment in such circumstances cannot be regarded as sudden and unexpected. Accordingly, the Board concludes that the borough manager's position was designated as a major non-tenured policymaking or advisory position.

Board Order, 9/7/17. Claimant petitions this Court for review.[7]

---

[7] This Court's review is limited to determining whether the findings of fact are supported by the evidence, whether an error of law has been committed or whether constitutional rights have been violated. *Sheets v. Unemployment Comp. Bd. of Review*, 708 A.2d 884, 885 n.3 (Pa. Cmwlth. 1998).

5

On appeal, Claimant asserts that the Board erred by concluding that he held a nontenured appointed position as Manager. Claimant contends in his Brief that the position did not meet the requirements to be deemed nontenured because the Ordinance did not expressly designate it as a major nontenured policymaking or advisory position. Further, Claimant's position did not require him to perform policymaking duties, as this was the responsibility of the Council, and although he was allowed to make recommendations to the Council, he made no advisory recommendations in practice.

Section 401(a)(1) of the Law provides, in part, that "[c]ompensation shall be payable to any employe who is or becomes unemployed, and who . . . [h]as, within his base year, been paid wages for employment as required by section 404(c) of this act." 43 P.S. § 801(a)(1). Section 404(c) provides that a claimant's weekly benefit rate is based on qualifying wages paid for employment during the base year. 43 P.S. § 804(c). Thus, to be eligible for benefits, the employee must be engaged in employment that pays qualifying wages as defined by the Law.

The Law expressly excludes certain positions from the definition of employment. Most pertinent here is Section 1201 of the Law, 43 P.S. § 911, regarding political subdivision employees. Specifically, Section 1201(b)(9) provides that the following political subdivision employees are not engaged in employment: "[i]ndividuals serving in positions which, under or pursuant to the laws of this Commonwealth, are designated as (i) a major nontenured policymaking or advisory position, or (ii) a policymaking position the performance of the duties of which ordinarily does not require more than eight hours per week." 43 P.S. § 911(b)(9).

6

To ascertain whether a position is designated as "major nontenured policymaking or advisory," this Court has held that the designation must be made "by the words of a statute, regulation, executive order or the like." *Conroy v. Unemployment Comp. Bd. of Review*, 693 A.2d 254, 256 (Pa. Cmwlth. 1997). The designation does not have to include the precise words "major" or "policymaking" or "advisory," although it could be done that way. *Id.*[8] When rendering a determination as to whether the position is designated as "major nontenured policymaking or advisory," the underlying purpose of the Law must be considered:

> The logic of [the Law] . . . is plain. The exclusion imposes ineligibility on the basis that any occupant of such a position can anticipate the possibility of job termination upon a change of administration, so that unemployment in such circumstances cannot be regarded as sudden and unexpected. The required official designation hence provides a basis for that expectation; when the nature of the position is designated by law, there is thus an official signpost which informs the jobholder, upon assuming the position, of what can be expected.

*Id.* Although it is not essential that the designation be made before an employee assumes his or her post, it is essential that the designation be more than a functional description of job duties, "even where that description is, in some attenuated way, made pursuant to the laws of this Commonwealth." *Id.* at 256-57. The designation must, at a minimum, "be a written statement of policy which has the clear and intended effect of establishing the job tenure and employment status attached to the

---

[8] This Court has also explained that "[i]t is enough that a statute, regulation, executive order, or the like communicate the concept that the position is policymaking or advisory." *City of Philadelphia v. Unemployment Comp. Bd. of Review*, 643 A.2d 1158, 1159 (Pa. Cmwlth. 1994).

7

position. Moreover, the statement must be made by an official or entity with authority to set such terms." *Id.* at 257.

In *City of Philadelphia v. Unemployment Comp. Bd. of Review*, 643 A.2d 1158 (Pa. Cmwlth. 1994), this Court held that the Board erred when it deemed the claimant, who held the position of city water commissioner, eligible for benefits because the city charter provided the required designation. *Id.* at 1160. The Court examined the relevant provisions of the Philadelphia Home Rule Charter, which created the city water department that the claimant headed. *Id.* at 1159.

The charter provided that the water commissioner served at "the pleasure of the appointing power and until a successor is qualified." *Id.* The charter further explained the water commissioner's job functions to include, in pertinent part, making recommendations to the "[m]ayor for transmission to the [c]ouncil." *Id.* at 1159-60. As a department head, the water commissioner had the power to prescribe rules for the department's internal government and to make such reasonable regulations as necessary and appropriate in the exercise of his powers and performance of duties. *Id.* at 1160. Based on a review of these provisions, this Court concluded that the provisions reached the "level of an official designation of the position as a major policymaking or advisory one." *Id.*

In contrast, this Court held in *Conroy* that the Board erred when it concluded that the Borough of Forest Hills's police chief was ineligible for benefits because the position designation did not provide the required notice. *Conroy*, 693 A.2d at 257. In *Conroy*, the claimant drafted the "Manual of Policy and Procedures for the Borough Police Department." *Id.* at 255. The manual set forth the duties and responsibilities of all members of the police department and was adopted by the Borough Council. *Id.*

The manual provided the police chief a policymaking role, including the power to "prescribe, promulgate, and enforce policies and regulations for the government of the Police Department." *Id*. Further, the claimant had the power to "formulate all policy relating to the Police Department" and had to have all policy statements published in the manual. *Id*. Nevertheless, this Court explained that the description, drafted by the claimant himself, merely listed the police chief's functions. *Id*. at 257. The description was not "intended to relate to the Chief's job security, nor could it reasonably be read to provide the requisite 'signpost'" to inform the claimant that he could face job termination upon a change of administration. *Id*.

Here, Claimant's position was created through an Ordinance prior to Claimant assuming the position, much like the charter established the claimant's position in *City of Philadelphia*.[9] The Ordinance provides that the Manager is the chief administrative officer responsible for the day-to-day operations of the Borough and is responsible to the Council in the furtherance of his or her duties. Ordinance at § 1-206.

The Manager holds a major "advisory position" as provided in Section 1201(b)(9) of the Law because the Ordinance requires him to advise the Council, which is the governing body of the Borough, to enable it to render decisions on Borough affairs. The plain language of Section 1201(b)(9) provides that it is the

---

[9] The parties do not contest that the Ordinance was enacted "under or pursuant to the laws of this Commonwealth." 43 P.S. § 911(b)(9). The Borough Code provides that the "Council shall enact ordinances in accordance with this part and the laws of this Commonwealth in which the powers of the borough shall be exercised as deemed beneficial to the borough and to provide for the enforcement of the powers of the borough." 8 Pa. C.S. § 3301.1(a). Further, the Borough Code provides that, "Every legislative act of council must be by ordinance." 8 Pa. C.S. § 3301.1(b). The General Assembly consolidated the Borough Code on April 18, 2014, and when it did so, it derived the language of the statute from prior law. Thus, the Ordinance here was enacted pursuant to state law, *i.e.*, the Borough Code.

designation of the position in the statute, regulation or, as here, the ordinance, that controls, not the conduct of the employee while holding the position. *See* 1 Pa. C.S. § 1921(b) ("[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."); *see also Zerbe v. Unemployment Comp. Bd. of Review*, 681 A.2d 740 (Pa. 1996).[10] As noted above, Section 1201(b)(9) provides that "[i]ndividuals serving in *positions* which . . . are *designated* as . . . major nontenured policymaking or *advisory*" are not engaged in employment. 43 P.S. § 911(b)(9) (emphasis added).

The Ordinance provides that the Manager submits recommendations for employment to the Council, attends all meetings of the Council and its committees, with the right to take part in the discussion, and makes recommendations to the Council as he or she deems necessary regarding the conduct of Borough affairs. Ordinance at § 1-206B, 1-206F & 1-206H. The obvious purpose of the Manager's attendance at Council meetings is to enable him or her to provide input and render advice to the Council, as needed, regarding decisions that it must make regarding Borough affairs. As noted in *Conroy*, the language of the Ordinance does not have to include the precise word "advisory" to be deemed a sufficient

---

[10] In *Zerbe*, the Supreme Court examined the language of Section 1002(11) of the Law, 43 P.S. § 892(11), which excludes from employment individuals in positions with the Commonwealth designated as "major nontenured policymaking or advisory." *Zerbe*, 681 A.2d at 743. The Supreme Court, upon review of the plain language of Section 1002(11), noted that nothing in the language requires a factual determination as to whether the claimant "actually performed major policymaking or advisory functions." *Id.* Rather, the exclusion is "expressly dependent upon a claimant's position being designated" as a major nontenured policymaking or advisory position. *Id.*

Here, the language of Section 1201(b)(9) of the Law, pertaining to employees of political subdivisions, is the same as the language considered by the Supreme Court in Section 1002(11). Applying the reasoning set forth by the Supreme Court in *Zerbe*, this Court must look to the language of the Manager position, not Claimant's testimony or assertions of what he did in practice while holding the position, to ascertain whether the position is designated as a major nontenured policymaking or advisory position.

designation. The Ordinance communicated the concept that the Manager has an advisory role to the Council. *See City of Philadelphia*, 643 A.2d at 1159.

In addition, the Ordinance established the job tenure status attached to the position, unlike the claimant's position in *Conroy*. The Ordinance provides that the Manager is appointed by the Council for an "indefinite term" to "serve at the pleasure of the Council." Ordinance at § 1-202. The Manager can be removed at any time by a majority vote of the Council members. *Id.* Because the Ordinance expressly provides that the Manager can be removed at any time by the Council, Claimant could anticipate the possibility of a job termination upon a change in the members of the Council. In short, Claimant had the requisite "signpost" of what to expect when he assumed the position of Manager.

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert E. Ihlein,                          :
            Petitioner         :
                                  :
        v.                      :
                                  :
Unemployment Compensation         :
Board of Review,                           :   No. 1402 C.D. 2017
            Respondent         :

## O R D E R

AND NOW, this 8th day of May, 2018, the order of the Unemployment Compensation Board of Review dated September 7, 2017 is AFFIRMED.

 

 

_____
CHRISTINE FIZZANO CANNON, Judge